**CASE NO. 20-1342**

# IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

JANE D. DICOCCO, MD,

*Plaintiff - Appellant,*

v.

MERRICK B. GARLAND,

Attorney General, United States Department of Justice*,*

*Defendant - Appellee,*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND

---

**PETITION FOR REHEARING AND
PETITION FOR REHEARING EN BANC**

---

Scott G. Crowley, Sr.
CROWLEY & CROWLEY
4870 Sadler Road
Suite 300
Glen Allen, VA 23060
804-205-5010
scrowley@crowleyandcrowley.com

*Counsel for Appellant*

Jay J. Levit
LAW OFFICE OF
 JAY J. LEVIT
10132 West Broad Street
Glen Allen, VA 23060
804-270-4600
jaylevit@msn.com

*Counsel for Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT REQUIRED BY FRAP 35(b) ...............................................1

BACKGROUND .........................................................................................2

    A. The Panel Decision Contravenes Decisions of the
       U.S. Supreme Court..........................................................................4

       1. Supreme Court Decisions Support Disparate
          Impact Under § 633a(a)..............................................................4

       2. The Panel Majority Ignored the Thrust of
          Supreme Court Precedent.............................................................7

    B. The Majority Implicitly Overruled Prior Fourth
       Circuit Precedent ............................................................................11

    C. The Majority Decision Created a Inter-Circuit
       Conflict ..........................................................................................14

    D. The Panel Decision is Contrary to the Position of the
       EEOC...............................................................................................16

CONCLUSION...........................................................................................17

CERTIFICATE OF COMPLIANCE.........................................................18

# TABLE OF AUTHORITIES

## Cases

Allegheny Gen. Hosp. v. NLRB,
    608 F.2d 965 (3d Cir. 1979) ................................................................. 13

Arizona v. Rumsey,
    467 U.S. 203 (1984) ........................................................................ 14

Babb v. Wilkie,
    140 S. Ct. 1168 (2020) .................................................................... 5, 6

Brown v. Rumsfeld,
    2005 WL 2331775 (EEOC Sept. 15, 2005) ...................................... 16

Burnet v. Coronado Oil & Gas Co.,
    285 U.S. 393 (1932) ........................................................................ 14

Carpenter v. Peters,
    2007 WL 632984 (EEOC Feb. 23, 2007) .......................................... 16

Chisholm v. U.S. Postal Serv.,
    665 F.2d 482 (4th Cir. 1981) ........................................................... 11

Eller v. McHugh,
    2010 WL 4986347 (EEOC Nov. 30, 2010) ...................................... 16

Erlenbaugh v. United States,
    409 U.S. 239 (1972) ........................................................................ 13

Furnco Constr. Corp. v. Waters,
    438 U.S. 567 (1978) .......................................................................... 9

Gomez-Perez v. Potter,
    553 U.S. 474 (2008) ................................................... 5, 7, 8, 15, 16

Griggs v. Duke Power Co.,
    401 U.S. 424 (1971) .......................................................................... 4

Gross v. FBL Financial Services, Inc.,
    557 U.S. 167 (2009) .......................................................................... 6

ii

*Harris v. United States,*
   536 U.S. 545 (2002) ................................................................ 13

*Karpe v. Chao,*
   416 F. Supp. 3d 1021 (S.D. Cal. 2019) ...................................... 8, 14

*Kennedy v. Shulkin,*
   Civ. Action No. 3:15-cv-01844-MBS (D.S.C. July 30, 2018) ......... 15

*Lehman v. Nakshian,*
   453 U.S. 156 (1981) ............................................................ 6, 7, 10

*Lujan v. Walters,*
   813 F.2d 1051 (10th Cir. 1987) ................................................ 14

*Meacham v. Knolls Atomic Power Lab.,*
   554 U.S. 84 (2008) ................................................................ 5, 9

*O'Shea v. Mineta,*
   2002 WL 31014649 (EEOC Aug. 30, 2002) ............................... 16

*Palmer v. United States,*
   794 F.2d 534 (9th Cir. 1986) ................................................... 14

*Payne v. Tennessee,*
   501 U.S. 808 (1991) ............................................................... 13

*Randall v. Sorrell,*
   548 U.S. 230 (2006) ............................................................... 14

*Smith v. City of Jackson,*
   544 U.S. 228 (2005) ........................................................ 5, 7, 9, 15

*United States v. IBM,*
   517 U.S. 843 (1996) ............................................................... 13

*Wachovia Bank v. Schmidt,*
   546 U.S. 303 (2006) ............................................................... 13

*Washington v. Davis,*
   426 U.S. 229 (1976) ................................................................ 4

*Watson v. Fort Worth Bank & Trust,*
   487 U.S. 977 (1988) ................................................................ 8

iii

Witkowsky v. Department of the Interior,
    1998 WL 563824 (EEOC Jan. 30, 1998) ........................................ 16

Wright v. Nat'l Archives & Records Serv.,
    609 F.2d 702 (4th Cir. 1979) ...................................................... 11, 12

## Statutes

29 U.S.C. § 623 ......................................................................... 6, 7, 8

29 U.S.C. § 633a ...................................................................... passim

42 U.S.C. § 2000e-16 ............................................................... passim

42 U.S.C. § e-2 ................................................................................ 11

## Other Authorities

EEOC Informal Discussion Letter, October 6, 2010
(https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-215) ......................... 16

Fed. R. App. P. 35 ........................................................................... 1

Fed. R. Civ. P. 12 ............................................................................ 3

## STATEMENT REQUIRED BY FRAP 35(b)

This case is of exceptional importance for current and future federal sector employees (and jobseekers) bringing disparate impact discrimination claims under the Age Discrimination in Employment Act of 1967 (ADEA). FRAP 35(b)(1)(B). Rehearing *en banc* also is "necessary to secure and maintain the uniformity" of the law governing this Circuit in that the panel majority's decision ignores binding Supreme Court precedent and effectively overrules several precedents established in panel decisions of this Court. FRAP 35(b)(1)(A).

A divided panel of this Court (Circuit Judges Richardson, Wilkinson and Floyd) held that sovereign immunity precludes federal sector employees from stating disparate impact claims under the ADEA, despite its broad statutory mandate that "[a]ll personnel actions affecting employees . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a).

Rehearing *en banc* is warranted because the panel decision:

(A) disregards Supreme Court precedent that support the application of disparate impact to § 633a(a);

(B) creates an intra-circuit split by implicitly overruling prior decisions of this Circuit Court of Appeals that allowed disparate impact claims for federal sector claimants under Title VII statutory language that is virtually identical to the ADEA's federal sector discrimination ban and, further, that predated legislative

amendments to Title VII but not the ADEA, relied on by the panel majority as justifying its unduly narrow construction of the ADEA;

(C) creates a circuit split by reaching a decision that stands in direct conflict with the authoritative decision of every other circuit court that has decided the issue; and

(D) it is in conflict with the long-standing position of the Equal Employment Opportunity Commission, the U.S. agency charged by statute with interpreting and enforcing the various federal anti-discrimination statutes.

The likely widespread impact on the federal workforce establishes the exceptional importance of this case and reinforces the need for rehearing.

<u>BACKGROUND</u>

Jane DiCocco MD was hired by the U.S. Bureau of Prisons (BOP) in 2014 at the age of 67 as a psychiatrist. BOP policy calls for all employees to pass a Physical Abilities Test (PAT) within the first year of employment. Although the BOP hired Dr. DiCocco pursuant to an exception to the age 35 maximum age for new hires, and although BOP did not hire her to be a correctional officer, it did not excuse her from passing the PAT. An employee is required to pass the PAT only once in course of their employment with BOP, regardless of their evolving physical status.

2

Dr. DiCocco, however, did not complete the PAT within the prescribed time, and declined a chance to retake the PAT the next day. She resigned her employment after being told that she would be fired for not passing the PAT. According to statistics provided by the BOP, most employees pass the PAT on either their first or second attempt. However, those who fail the PAT are mostly female and over 40 years of age.

After exhausting her remedies in the EEOC, Dr. DiCocco sued for sex and age discrimination in the U.S. District Court for the Eastern District of Virginia, under Title VII of the Civil Rights Act of 1964 and the ADEA. The District Court dismissed her claim under Fed. R. Civ. P. 12(b)(6), as it held that Dr. DiCocco had suffered no adverse employment consequence and, therefore, did not have standing to sue.

A panel of this Court determined that Dr. DiCocco did have standing to sue but that the text of Section 633a(a) of the ADEA does not encompass a liability claim premised on proving discrimination via a theory of "disparate impact."[1]

---

[1] That is, "neither the legal background … nor the statute's text or structure support allowing a disparate impact . . .  liability claim under [Section 633a(a) of] the ADEA[]. . . . . And because the government's waiver of sovereign immunity is limited to claims by persons 'aggrieved under the section, her claim is not within the scope of that waiver." Slip Op. at 23.

3

A. <u>The Panel Decision Contravenes Decisions of the U.S. Supreme Court</u>.

    1. <u>Supreme Court Decisions Support Disparate Impact Under § 633a(a)</u>.

Although the Supreme Court has never addressed whether the Congress abrogated sovereign immunity for federal sector employees suing under the ADEA for disparate impact, the Supreme Court has consistently interpreted Section 633a(a), as well as the laws on which it was founded, to afford broad application, consistent with its text, absent some compelling, specific reason to do otherwise, which the panel in this case failed to identify. Rehearing *en banc* is required to honor, and not to defy, these precedents.

For instance, although Title VII originally contained no language explicitly referencing disparate impact, the Supreme Court ruled in <u>Griggs v. Duke Power Co</u>., 401 U.S. 424 (1971), that disparate impact claims are encompassed within the Act as they seek to remove "artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of . . . impermissible classification." <u>Id</u>. at 431.

Three years later, in <u>Washington v. Davis</u>, 426 U.S. 229, 249-52, n.15 (1976), the Supreme Court recognized that disparate impact analysis is a permissible means of proving discrimination within the federal sector under Title VII, Section 717, 42 U.S.C. § 2000e-16(a).

Griggs became the basis for the Supreme Court deciding in 2005, that private sector employees could rely on a disparate impact theory of liability under the ADEA in Smith v. City of Jackson, 544 U.S. 228 (2005).[2] And in Meacham v. Knolls Atomic Power Lab'y, 554 US. 84, 95-96 (2008), the Court treated its Smith plurality decision as controlling in elaborating on ADEA disparate impact liability.

Further, in Gomez-Perez v. Potter, 553 U.S. 474, 487 (2008), the Supreme Court held that federal sector employees may sue for retaliation under the ADEA, despite the lack of an express federal sector retaliation provision, and therein described § 633a(a) as a "broad prohibition of 'discrimination,' rather than a list of specific prohibited practices." Id. at 487.

Finally, in 2020, the Supreme Court held in Babb v. Wilkie, 140 S.Ct. 1168 (2020) that "the plain meaning" of § 633a(a) of the ADEA affords federal sector claimants greater protection than private sector claimants. Specifically, it declared that federal ADEA plaintiffs may prevail (albeit with modified relief) if an employer's adverse decision was in any way based on age, rather than only under

---

[2] In Smith, four Justices ruled that the ADEA's text "as interpreted in Griggs," supported disparate impact, 544 U.S. at 234-37, 240, and Justice Scalia concurred, calling Smith "an absolute classic case for deference" to the EEOC's similar reading of the ADEA, based in significant part on Griggs. Id. at 243-44.

the more strictive "but-for" standard called for in Section 623(a) following <u>Gross v.</u> <u>FBL Financial Services, Inc.</u>, 557 U.S. 167, 175 (2009). <u>Babb</u>, 140 S.Ct. at 1171.

The Court declared in <u>Babb</u>: "Thus, under §633a(a), a personnel action must be made 'untainted' by discrimination based on age, and the addition of the term 'any' ('free from *any* discrimination based on age') drives the point home." <u>Id</u>. at 1173-74. This unequivocal mandate conveys Congress' intention in enacting § 633a(a) to preclude any and all forms of age discrimination – whether intentional or as a result of facially neutral policies or practices falling more harshly on older workers without adequate justification.

Seven years after enactment of the private sector provision of the ADEA, Congress enacted Section 15 (29 U.S.C. § 633a), as "a distinct statutory scheme applicable only to the federal sector." <u>Lehman v. Nakshian</u>, 453 U.S. 156, 166 (1981). That ADEA provision, as enacted, was essentially identical to the federal sector provisions of Title VII (Section 717, 42 U.S.C. § 2000e-16) except as Congress identified a different protected class than in Title VII.

So, whereas ADEA Section 15 stated (and still states): "All personnel actions affecting employees . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a); Title VII Section 17 stated (and still states): "All personnel action affecting employees or applicants for employment . . . shall be

made free from any discrimination based on . . . sex." 42 U.S.C. § 2000e-16(a).

The Supreme Court in <u>Gomez-Perez</u> explained: "The ADEA federal-sector

provision was patterned 'directly after' Title VII's federal-sector discrimination

ban."). 553 U.S. at 487, (citation omitted). The Court further stated that the federal

sector provisions of both statutes contain "broad prohibition[s] of 'discrimination,'

rather than a list of specific prohibited practices." <u>Id</u>.

    2. <u>The Panel Majority Ignored the Thrust of Supreme Court Precedent</u>.

    Notwithstanding this consistent body of precedent, the panel majority read

overwhelming significance in the fact that § 633a(a) makes no provision for the

defense of reasonable factors other than age found in § 623(a), one of multiple

factors the plurality in <u>Smith v. City of Jackson</u> cited as supporting disparate

impact under § 623(a). Slip Op. at12, 19-20 (citing 544 U.S. at 239). Indeed, the

panel Majority largely relied on <u>Smith</u> as a rigid analytical template for its

decision, despite the differences between § 623(a) and § 633a(a). <u>See id</u>. at 10-12,

15 ("<u>Smith</u> teaches . . . .") Yet the Majority gave short shrift to the Supreme

Court's explicit instruction in <u>Gomez-Perez</u> that § 633a(a) is "self-contained" and

does not look to § 623(a) to assist in its interpretation.

       The ADEA federal-sector provision, however, was not modeled
after §623(d) and is couched in very different terms. The ADEA federal-
sector provision was patterned "directly after" Title VII's federal-sector
discrimination ban. *Lehman* v. *Nakshian*, 453 U. S. 156, 167, n. 15 (1981).

7

Like the ADEA's federal-sector provision, Title VII's federal-sector
provision, contains a broad prohibition of "discrimination," rather than a
list of specific prohibited practices.

553 U.S. at 489. Thus, any consideration of the scope of the prohibitory language
of § 633a(a) should be made solely (or at least principally) with respect to the text
and structure of that section, either without any regard to, or at least without
exclusive conformity to, construction of § 623. See Karpe v. Chao, 416 F.Supp.3d
at 1021, 1030 n. 4 (S.D. Cal. 2019) ("this Court's conclusion that the federal-sector
provision permits disparate impact claims is based squarely on § 633a(a) itself,
unaffected by other sections of the ADEA."). The panel's myopic approach was a
fundamental flaw in its reasoning.

The Supreme Court has held that "discrimination" based on disparate impact
under the private sector provision of the ADEA is ultimately the same legal issue
as "discrimination" based on disparate treatment. The Court stated:

The distinguishing features of the factual issues that typically dominate in
disparate impact cases do not imply that the ultimate legal issue is different
than in cases where disparate treatment analysis is used. . . . Rather, the
necessary premise of the disparate impact approach is that some
employment practices, adopted without a deliberately discriminatory
motive, may in operation be functionally equivalent to intentional
discrimination.

Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988) (plurality opinion)
(citations omitted). The same approach is warranted in regard to the ADEA's

federal-sector provision. The Majority failed to justify or even explain its departure from this settled aspect of Supreme Court jurisprudence.

As the Dissent aptly explained, Slip Op. at 27, 31, disparate treatment and disparate impact are nothing more than two separate analytic methods for reaching the same goal – the prohibition of "discrimination." It follows that when Congress waives its sovereign immunity for federal sector age discrimination and, especially, in statutory language expressly aspiring to make "*all* personnel actions . . . *free from any* discrimination," § 633a(a) (emphasis added), it did so for all potential theories of liability regarding such discrimination. In <u>Watson</u>, the Supreme Court referred to "disparate impact analysis" as simply another method of proving illegal discrimination. <u>See</u> <u>Meacham</u>, 544 U.S. at 102 (discussing disparate impact: "As we have said before, Congress took account of the distinctive nature of age discrimination . . . when it put the RFOA clause into the ADEA, 'significantly narrow[ing] its coverage.' *City of Jackson*, 544 U.S. at 233."); <u>Furnco Constr. Corp. v. Waters</u>, 438 U.S. 567, 583 (1978) (Marshall, J., concurring) ("Where the Title VII claim is that a facially neutral employment practice actually falls more harshly on one racial group, thus having a disparate impact on that group, our cases establish *a different way of proving the claim*.") (emphasis added).

9

Neither the Appellee nor the Majority have cited any authority that Congress must separately and specifically express its intent to waive immunity with respect to every theory of liability arising from the statute. On the contrary, the Majority acknowledged that the Supreme Court held in <u>Gomez-Perez</u> that § 633a(a) "need not" satisfy a rule of "strict constru[ction] in favor of the sovereign." Slip Op. at 9 n.2.

When Congress waived its sovereign immunity under § 633a(a), it made no reference to theories of liability. Instead, the statute generally "prohibits age discrimination in federal employment." <u>Lehman</u>, 453 U.S. at 162. The Supreme Court declared: "Section 15(c) provides the means for judicial enforcement of this guarantee: any person aggrieved 'may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes' of the Act." <u>Id</u>. If the government's argument prevails and disparate impact analysis is excluded from § 633a(a), current and future federal workers and job seekers will no longer have the full protection of the ADEA's "guarantee" of some relief in the event of "any" age discrimination.

It is reasonable to suppose that Congress intended the federal sector provisions of the Title VII and the ADEA to be interpreted similarly. In nearly 50 years, Congress has never seen the need to carve out an exception for § 633a(a)

10

precluding federal sector disparate impact liability. And until the panel decision

handed down on November 17, 2021, no such exception has been declared by the

appellate courts.

B. The Majority Implicitly Overruled Prior Fourth Circuit Precedent.

Both the Majority and Dissent considered that Congress codified disparate

impact liability for federal sector Title VII claims when it enacted the Civil Rights

Act of 1991 (CRA), 42 U.S.C. e-2(k)(1)(A)(i). Slip Op. at 8 n. 1, 38-39. The

Dissent found it significant, however, that the Fourth Circuit "permitted disparate-

impact claims against the federal government under § 2000e-16 and analyzed those

claims on the merits prior to the CRA of 1991." Slip Op. at 40.

Those pre-CRA Fourth Circuit decisions are Chisholm v. U.S. Postal Serv.,

665 F.2d 482, 488, 496-97 (4th Cir. 1981) (applying Griggs-based disparate impact

analysis for federal employees); and Wright v. Nat'l Archives & Records Serv.,

609 F.2d 702, 705, 711-13 (4th Cir. 1979) (en banc) (disparate impact necessary

"to ensure a more perfect realization of the beneficent purposes of Title VII").

The Majority dismissed either ruling as binding because "neither decision

analyzes whether the text of 42 U.S.C. § 2000e-16(a) permits disparate impact

claims." Slip Op. at 23, n.14. Yet the en banc Wright did just that. It made clear

that it was following Griggs in holding that disparate impact analysis was as

11

necessary to root out invidious discrimination in the federal sector as in the private sector. Ironically, in <u>Wright</u>, this Court, while endorsing disparate impact as a means of proving illegal "discrimination," cautioned against applying the doctrine with "a rigidity or inflexibility that effectively undercuts . . . Congressional purpose. . . ." <u>Id</u>. at 713. Yet, by dismissing the Court's nuanced analysis in <u>Wright</u>, the Majority engaged in precisely the "rigidity and inflexibility" <u>Wright</u> warned against. Accordingly, the Court's full admonition in <u>Wright</u> bears repeating:

> Disparate impact doctrine as first laid down in Griggs was clearly designed to ensure more perfect realization of the beneficent purposes of Title VII by making plain that discriminatory consequences as well as discriminatory intent fell under the ban of this remedial legislation, and by providing a relatively easy burden of Prima facie proof of discriminatory consequences to overcome difficulties that might normally obtain in proving "discrimination in employment" Vel non. As even a cursory survey of employment discrimination cases since Griggs will easily show, it has been a mighty instrument in correcting the more subtle and sometimes unconscious forms of discrimination that have pervaded employment as tragic legacies from our history. For this reason, it should not be applied by courts with a rigidity or inflexibility that effectively undercuts its intended function of fairly implementing Congressional purpose to root out these more subtle forms.

<u>Id</u>. at 712-13.

The Dissent reasoned not just that the panel was bound by <u>Chisholm</u> and <u>Wright</u>, but also that those decisions were correctly decided. "If § 2000e-16 authorized disparate-impact claims *before* they were codified into Title VII, our

precedents mandate the same for § 633a(a) since the statutory language is

identical." Slip Op. at 41, citing <u>Wachovia Bank v. Schmidt</u>, 546 U.S. 303, 305

(2006) ("under the *in pari materia* canon, statutes addressing the same subject

matter generally should be read 'as if they were one law.'") (quoting <u>Erlenbaugh v.</u>

<u>United States</u>, 409 U.S. 239, 243 (1972)).

The panel Majority's heedless treatment for Circuit precedent undermines

the foundational principle of *stare decisis* that undergirds the law's expectation that

cases involving similar facts will be decided in uniformity. <u>See</u> <u>Allegheny Gen.</u>

<u>Hosp. v. NLRB</u>, 608 F.2d 965, 969-970 (3rd Cir.1979):

> A judicial precedent attaches a specific legal consequence to a detailed set
> of facts in an adjudged case or judicial decision, which is then considered
> as furnishing the rule for the determination of a subsequent case involving
> identical or similar material facts and arising in the same court or a lower
> court in the judicial hierarchy.

Justice Breyer explained the importance of the doctrine of *stare decisis*:

> The Court has often recognized the "fundamental importance" of stare
> decisis, the basic legal principle that commands judicial respect for a
> court's earlier decisions and the rules of law they embody. *See Harris v.
> United States*, 536 U. S. 545, 556-557 (2002) (plurality opinion) (citing
> numerous cases). The Court has pointed out that stare decisis "`promotes
> the evenhanded, predictable, and consistent development of legal
> principles, fosters reliance on judicial decisions, and contributes to the
> actual and perceived integrity of the judicial process.'" *United States v.
> International Business Machines Corp*., 517 U. S. 843, 856 (1996) (quoting
> *Payne v. Tennessee*, 501 U. S. 808, 827 (1991)). Stare decisis thereby
> avoids the instability and unfairness that accompany disruption of settled
> legal expectations. For this reason, the rule of law demands that adhering to

13

> our prior case law be the norm. Departure from precedent is exceptional, and requires "special justification." *Arizona v. Rumsey*, 467 U. S. 203, 212 (1984). This is especially true where, as here, the principle has become settled through iteration and reiteration over a long period of time.

Randall v. Sorrell, 548 U. S. 230, 243-44 (2006) (Breyer, J).

Justice Brandeis stated the importance of legal principles being settled over being settled right: "Stare decisis is usually the wise policy because in most matters it is more important that the applicable rule of law be settled than that is be settled right. . . ." Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406-07 (1932) (Brandeis, J., dissenting).

This Court should remain faithful to the precedents that have controlled this important area of the law for current and future federal workers and jobseekers for more than 42 years. Only the full Court should overrule them.

C. The Majority Decision Created a Inter-Circuit Conflict.

The panel Majority and Dissent both cited two circuit court rulings that recognized Federal-sector ADEA claims based on invoking disparate impact theory. Slip Op. at 14, 45-46, discussing Palmer v. United States, 794 F.2d 534, 536-39 (9th Cir. 1986), and Lujan v. Walters, 813 F.2d 1051, 1057-58 (10th Cir. 1987).

District courts are split whether sovereign immunity bars disparate impact causes of action under § 633a(a). See Karpe, 416 F.Supp.3d at 1026-27 and n. 2,

14

1028) (S.D. Cal. 2019) (collecting cases but concluding: "The plain language of §

633a(a) bars age discrimination by federal employers whether resulting from

intentional or unintentional personnel actions.").

In this Circuit, the U.S. District Court for South Carolina in <u>Kennedy v.</u>

<u>Shulkin</u>, Civ. Action No. 3:15-cv-01844-MBS (D.S.C. July 30, 2018), rejected the

government's position, stating:

> Neither the Supreme Court nor the Court of Appeals for the Fourth
> Circuit has addressed the issue of whether the RFOA defense is applicable
> to the ADEA's federal-sector provision. In *Gomez-Perez v. Potter*, 553 U.S.
> 474 (2008), upon which the court relied to establish the viability of
> disparate impact claims in federal-sector ADEA litigation, the Supreme
> Court observed that "the ADEA federal-sector provision was patterned
> 'directly after' Title VII's federal-sector discrimination ban." *Id*. at 487. The
> Supreme Court explained that "like the ADEA's federal-sector provision,
> Title VII's federal-sector provision contains a broad prohibition of
> 'discrimination,' rather than a list of specific prohibited practices." *Id*.
> (comparing 42 U.S.C. § 2000e-16(a), "personnel actions affecting federal
> employees 'shall be made free from any discrimination based on race,
> color, religion, sex, or national origin," with 29 U.S.C. § 633a(a)
> "personnel actions affecting federal employees who are at least 40 years of
> age 'shall be made free from any discrimination based on age'"). Utilizing
> analogous cases from Title VII federal-sector discrimination claims, the
> Supreme Court recognized the availability of retaliation claims under §
> 633a. Likewise in this case, the court adopted the Magistrate Judge's
> reliance on *Smith v. City of Jackson*, 544 U.S. 228 (2005), noting the
> similarities between Title VII and the ADEA to establish the cognizability
> of ADEA federal-sector disparate impact claims. *Kennedy v. Shulkin* (D.
> S.C., 2018).

<u>Id</u>. at 3-4.

15

D. <u>The Panel Decision is Contrary to the Position of the EEOC</u>.

The EEOC has publicly stated its long-standing position that disparate

impact liability is included as part of § 633a(a):

> In its administrative decisions involving claims of discrimination against federal government agencies, the EEOC has long held that disparate impact claims are available under § 633a, <u>see</u>, <u>e</u>.<u>g</u>., <u>Carpenter v. Peters</u>, EEOC Appeal Nos. 0120065151, *et al*. (Sept. 20, 2005) (reversing agency dismissal where complainants adequately alleged disparate impact under the ADEA); <u>Witkowsky v. Department of the Interior</u>, EEOC Petition No. 03970122 (Jan. 30, 1998) (finding no disparate impact where the complainant failed to identify an alternative practice that would accomplish a similar result with less impact on older workers). The Commission's position is consistent with the Supreme Court's broad reading of § 633a(a) in another context. <u>See</u> <u>Gomez-Perez v. Potter</u>, 553 U.S. 474, 487 (2008) (inferring a cause of action for retaliation in the federal sector and describing § 633a as a broad prohibition of discrimination, rather than a list of specific prohibited practices.).

EEOC Informal Discussion Letter, October 6, 2010

(https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-215).

In addition to the two EEOC cases cited by the panel Majority, Slip Op. at

15 n.9 (<u>Carpenter</u>, 2007 WL 632984 (EEOC Feb. 23, 2007) and <u>Witkowsky</u>, 1998

WL 563824 (EEOC Jan. 30, 1998), the EEOC has elsewhere confirmed its position

ADEA § 633a(a) permits disparate impact claims. <u>See</u> <u>Eller v. McHugh</u>, 2010 WL

4986347 (EEOC Nov. 30, 2010); <u>Brown v. Rumsfeld</u>, 2005 WL 2331775 (EEOC

Sept. 15, 2005); <u>O'Shea v. Mineta</u>, 2002 WL 31014649 (EEOC Aug. 30, 2002).

16

## **CONCLUSION**

For the reasons stated herein, the Appellant Jane D. DiCocco, MD

respectfully requests that the Court of Appeal sitting en banc vacate the decision of

the panel Majority and rehear the matter.

**The undersigned respectfully requests oral argument**.

Respectfully Submitted,

*/s/ Scott G. Crowley, Sr.*
Scott G. Crowley, Sr.
CROWLEY & CROWLEY, P.C.
4870 Sadler Road
Suite 300
Glen Allen, VA 23060
804-205-5010
scrowley@crowleyandcrowley.com


*/s/ Jay J. Levit*
Jay J. Levit
LAW OFFICE OFJAY J. LEVIT
10132 West Broad Street
Glen Allen, VA 23060
804-270-4600
jaylevit@msn.com

Counsel for Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because:

The word count of this brief is <u>3,899</u>.

2. This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using
Microsoft Word, Times New Roman, 14 point.

February 2, 2022

*/s/ Scott G. Crowley, Sr.*
Scott G. Crowley, Sr.

18